1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GAIL E. CRAIG,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05469-RBL-KLS

REPORT AND RECOMMENDATION

Noted for September 6, 2013

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On July 28, 2008, plaintiff filed an application for SSI benefits, alleging disability as of

January 1, 2000, due to severe major depression, single episode without psychotic features,

degenerative disc disease in his lumbar spine and arthritis in his right hip. See Administrative

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

REPORT AND RECOMMENDATION - 1

Record ("AR") 16, 154.  That application was denied upon initial administrative review on October 9, 2008, and on reconsideration on February 23, 2009. See AR 16.  A hearing was held before an administrative law judge ("ALJ") on November 4, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 33-72.  Also at the hearing, plaintiff amended his alleged onset date of disability to July 28, 2008. See AR 65.

In a decision dated March 23, 2011, the ALJ determined plaintiff to be not disabled. See AR 16-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 26, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481.  On June 1, 2012 plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on November 5, 2012. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in assuming plaintiff had worked after July 2008; (2) in evaluating the medical opinion evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing his residual functional capacity; and (5) in finding him to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Findings Regarding Plaintiff's Work

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step one in this case, the ALJ found plaintiff did not meet his burden of establishing he has not engaged in substantial gainful activity ("SGA") since his amended alleged onset date of disability.  Specifically, the ALJ found in relevant part:

> In 2009 the claimant reported working several temporary positions and being paid "under the table" for this work.  Since the claimant did not report earnings for this work, the records do not reflect any actual earnings since 2000.  Exhibit 4D/1, 5D/2, 6D.  Because the claimant is not reporting his earnings, it is not possible to determine this true income after July 28, 2008.  It is reasonable to infer that he was earning at SGA levels or at significant levels to avoid payment of taxes.  This [sequential disability] evaluation [process] will continue in the alternative.

See AR 18.  A claimant will not be entitled to benefits for any period of time during which he or she has engaged in "substantial gainful activity." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(i), (b).

The undersigned agrees with plaintiff that the ALJ erred in finding he had engaged in SGA.  As noted by the ALJ, given that plaintiff has not reported any actual earnings since 2000, "it is not possible to determine [his] true income after July 28, 2008."  But if it is not possible to determine what plaintiff's true income was, it is entirely unclear how the ALJ can determine that SGA has been met in this case.  Nor has the ALJ pointed to any evidence in the record that even if it is reasonable to assume plaintiff was avoiding payment of taxes, he in fact engaged in work-related activity at the SGA level. See 20 C.F.R. § 416.974(b)(2); see also Soria v. Callahan, 16 F. Supp.2d 1145, 1149-50 (C.D. Cal. 1997).

REPORT AND RECOMMENDATION - 4

As noted by plaintiff, however, such error was harmless, given that the ALJ proceeded on to the remaining steps of the sequential disability evaluation process "in the alternative."[3] AR 18. The undersigned, furthermore, disagrees with plaintiff's assertion that the ALJ's error in finding it reasonable to assume he engaged in SGA "contributed to her erroneous analysis of the medical evidence and testimony" during the subsequent disability evaluation steps in this case. ECF #14, p. 3. Indeed, as discussed in greater detail below, the ALJ committed no reversible error in her analysis and evaluation of that evidence and testimony, including her analysis and evaluation of plaintiff's reporting of his work activity to his medical providers.

II.    The ALJ's Evaluation of the Medical Opinion Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

_____

[3] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."); see also Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

REPORT AND RECOMMENDATION - 5

"must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss <i>all</i> evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Wheeler

Plaintiff challenges the ALJ's following findings:

Kimberly Wheeler, Ph.D. performed a Washington State Department of Social and Health Services psychological/psychiatric evaluation on April 1, 2008. Dr. Wheeler found the claimant's depressed mood severely limited because of hopelessness. His motor retardation was similarly limited based on his depression symptoms. In cognitive factors, the claimant had a marked limitation in his ability to exercise judgment/make decisions and perform routine tasks. She elaborated that the claimant was unable to problem-solve well, he needed "coaching" and redirection and his mentation was "sluggish."

Socially, she thought he was "too depressed" to interact appropriately at work and was severely limited with his ability to respond appropriately to the work situation. A mental status examination showed the claimant was oriented, his thought process and content were within limits, his fund of knowledge score was 4/5, his immediate memory was perfect and his delayed memory score was 2/3. He could complete concentration tasks, his comprehension was within limits and his judgment and insight were within limits. The claimant reported marked limitations with his daily activities. Exhibit 4F/1 – 6.

Little weight is assigned to this evaluation. The marked limitations are beyond the findings on the relatively normal mental status examination and the record and are not supported by any objective testing. In fact, treatment notes contain little evidence of significant ongoing depressive symptoms and Dr. Wheeler identified the claimant's depression as a "single episode." This is consistent with the State findings of "insufficient evidence" to find a severe mental impairment. Dr. Wheeler's evaluation is simply inconsistent with the claimant's longitudinal functioning as discussed in this decision. Dr. Wheeler's conclusions are based predominantly on the claimant's subjective complaints made to her while he was attempting to qualify for state benefits, as evidenced by the absence of objective testing. For example, she check-marked the claimant's depressed mood and his physical complaints as "severe," both conclusions made largely from the claimant's report to her on these issues. While Dr. Wheeler described her observation of the claimant's depressed presentation at the evaluation, she did not perform validity testing to rule out symptom exaggeration. Notably, she marked the claimant's concentration, comprehension and abstraction to be within normal limits.

AR 24. Specifically, plaintiff argues Dr. Wheeler's opinion is supported by objective clinical

REPORT AND RECOMMENDATION - 7

findings.  The undersigned agrees with the ALJ, however, that overall such evidence is for the

most part lacking, particularly in light of the "relatively normal mental status examination" Dr.

Wheeler performed. AR 24, 265-66; see Batson, 359 F.3d at 1195 (ALJ need not accept opinion

of even treating physician if it is inadequately supported by clinical findings).  Even the clinical

findings plaintiff cites to support his argument here – or at least those not based on his own self-

reporting – fail to objectively demonstrate the level of limitation assessed by Dr. Wheeler. See

ECF #14, pp. 4-5 (citing and quoting AR 263-64).  In addition, as noted by the ALJ, clinical

evidence of significant ongoing depressive symptoms is largely lacking from the record. See

Batson, 359 F.3d at 1195(ALJ need not accept treating physician's opinion if that opinion is

inadequately supported "by the record as a whole").

      Plaintiff next argues it was improper for the ALJ to reject Dr. Wheeler's opinion based on

the fact that she diagnosed him as only having a "single episode" of depression, but then fails to

explain on what basis he asserts this to have been improper.[4]  Given the absence of objective

support for the marked limitations Dr. Wheeler assessed, furthermore, the undersigned also finds

no merit in the argument that the ALJ erred in discounting those limitations because they were

largely based on plaintiff's subjective complaints, given that as discussed in greater detail below,

the ALJ did not err in discounting as well plaintiff's credibility concerning his subjective

complaints. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595,

601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of

her symptoms and limitations may be disregarded where those complaints have been properly

---

[4] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued
with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145,
1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived);
Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief
ordinarily will not be considered).

REPORT AND RECOMMENDATION - 8

discounted).  Thus, while it was improper for the ALJ to discount Dr. Wheeler's opinion on the basis that validity testing was not performed – as there is no indication such testing was required or warranted at the time of the evaluation – and on the basis that that evaluation was performed at a time plaintiff was attempting to qualify for state benefits[5], the ALJ provided several other valid reasons for not adopting that opinion.

B.     Dr. Burke

Plaintiff takes issue as well with the following findings made by the ALJ:

John F. Burke, Ph.D. completed a psychological evaluation on February 3, 2009.  Dr. Burke commented that, throughout the interview, the claimant remained fixated on his history of difficulties relating to removal of his commercial driver's license and his inability to pay court fines associated with owing child support.  According to Dr. Burke, the claimant spoke at "length" about depression symptoms relating to this situation and his financial insolvency.  Dr. Burke noted that the claimant was capable of walking without a limp or any other difficulties and he could walk approximately 60 feet without problems.

A mental status examination showed the claimant's speech was coherent, logical and relevant with no suggestion of disorganization or flight of ideas or suicidal thoughts and he was oriented.  Throughout the assessment, the claimant was "obsessed" and ruminated about the manner in which he was treated by the courts.  Formal testing, according to Dr. Burke, showed he reported five out of five digits forward and backward and he did not have problems completing serial threes.  Short-term memory was intact but his fund of information and abstract thinking were somewhat impaired.  He performed "very well" defining vocabulary words.  His fine motor skills were intact.  According to the claimant, his lack of trust and dislike for social interaction limited his social contact with others.

Dr. Burke opined, based on the objective examination that the claimant could understand, remember and carry out an "extensive variety" of complex, uncomplicated and simple, one or two-step instructions and he possessed sufficient concentration and attention to carry out these tasks.  He also thought the claimant had the ability to perform a range of instructions or activities on a sustained basis.  Pursuant to the claimant's complaints, he could require time to develop trust before getting along with others at work.  However, Dr. Burke

---

[5] Absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it.  See Lester, 81 F.3d at 832.

REPORT AND RECOMMENDATION - 9

1
2
3

> stated he did not find the presence of a major mental illness that would
> significantly limit the claimant's socialization. Exhibit 8F/1 – 4.  This opinion
> is given significant weight because an objective examination was performed
> that is consistent with the record as a whole, showing the claimant could
> perform at least simple tasks with some complex work.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

AR 25-26.  Plaintiff argues the ALJ erred here by failing to mention Dr. Burke's opinion that he

"would have some difficulty, at least in the beginning with developing appropriate interactions

with the public, coworkers or supervisors." ECF #14, p. 6 (quoting AR 292).  While the ALJ did

not specifically mention this statement, the ALJ did note Dr. Burke's further statement, which

came almost immediately thereafter, that plaintiff "would require considerable time to develop a

sense of trust before he could be expected to get along with [the public, coworkers or

supervisors] fairly easily." AR 292.  These two comments essentially contain the same opinion.

That is, Dr. Burke felt plaintiff "would require considerable time . . . to get along" – i.e., that he

"would have some difficulty, at least in the beginning with developing appropriate interaction" –

with the public, coworkers or supervisors in the workplace.  As such, there was no need for the

ALJ to mention both statements.[6]  Plaintiff also asserts the ALJ erred in failing to mention Dr.

Burke's further comment that it "seem[ed] quite likely that [his] condition will persist in the

absence of treatment." AR 293.  But given that the ALJ did not err as alleged by plaintiff above,

and that as discussed in greater detail below the record demonstrates that plaintiff improved with

treatment, here too the ALJ did not err.

     C.    Dr. Krueger

     Also in terms of the medical opinion evidence concerning plaintiff's mental impairments,

21
22
23
24

the ALJ found that:

25
26

---

[6] See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and
developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting Black v. Apfel, 143
F.3d 383, 386 (8th Cir.1998)); Magallanes, 881 F.2d 747, 755, (9th Cir. 1989) (ALJ need not recite "magic words"
in his or her decision).

REPORT AND RECOMMENDATION - 10

Keith Krueger, Ph.D. completed a Washington State Department of Social and Health Services psychological/psychiatric evaluation on April 29, 2009.  In the claimant's depressed mood, anxiety and expression of anger, Dr. Krueger found marked limitations.  In cognitive factors, he found only mild to moderate limitations.  Socially, Dr. Krueger determined the claimant was markedly limited in his ability to relate to others and respond to the pressures and expectations of work.  Dr. Krueger remarked that the claimant was "very bitter" about the loss of his commercial license.  The claimant had some "physical challenges" along with some "bad breaks" and presented as mostly an "unpleasant person," with self-pity. Exhibit 14F/1 – 8.

Some weight is given to this assessment.  The undersigned gives little weight to the marked limitations because these are based mostly on the claimant's subjective complaints, as indicated by few mental health treatment records in the evidence confirming any of the claimant's complaints.  The evaluation contains no objective testing in its support of conclusions.  However, the undersigned weighs heavily his assessment that the claimant's overall situation is related to his responses and motivation as well as the mild to moderate limits in cognitive factors, pursuant to the record.

AR 26.  Plaintiff argues Dr. Krueger did provide objective clinical findings, including the results of psychological testing. See AR #14, p. 7 (citing AR 356-57).  While it is true that Dr. Krueger does contain such findings in the form of both mental status examination findings (see AR 354-555) and psychological testing results (see AR 356-57), the ALJ is correct that those findings and results do not actually *support* the severity of functional limitation noted.  Accordingly, here too plaintiff has shown no error.

D.    Dr. Heilbrunn

With respect to the medical opinion evidence in the record regarding plaintiff's physical impairments, the ALJ found in relevant part:

Mark Heilbrunn, M.D. completed a physical evaluation on January 29, 2009.  Dr. Heilbrunn observed that the claimant was capable of walking for at least ten to fifteen minutes uninterrupted but he had decreased balance on either leg.  An objective evaluation of the claimant's spine showed midline and paraspinous lumber tenderness with positive straight leg raising from the sedentary and supine position.  His hips had decreased rotation, associated with pain.  Strength in the upper and lower extremities was 5/5.  His assessment included bilateral hip degenerative joint disease with lumbar

REPORT AND RECOMMENDATION - 11

degenerative disc disease.

Dr. Heilbrunn opined that the claimant's prominent limitations involved his lumbar back and hips.  The claimant could sit for at least 20 – 25 minutes uninterrupted with a maximum sitting capacity up to 6 hours.  Standing and walking could be accomplished 10 to 15 minutes uninterrupted, up to 4 hours. He would be unable to climb because of bilateral hip osteoarthritis and the claimant was limited in his ability to balance.  Stooping was limited to frequently and kneeling, crouching and crawling would be limited.  The claimant's ability to lift and/or carry was 20 pounds occasionally and frequently.  Although Dr. Heilbrunn recommended a moderate limitation with the use of the claimant's left shoulder in constant or frequent overhead reaching, this impairment has been found nonsevere, as discussed earlier.  No assistive device was needed for standing or walking.  Due to balancing problems, the claimant should not work at heights. Exhibit 7F/1 – 6.

The undersigned assigns significant weight to this assessment and agrees that the claimant could perform light work and that his back and bilateral hip impairments would limit the claimant's postural, climbing ability and working at heights.  The undersigned notes that based on the record, the claimant should also avoid exposure to the extreme cold and vibrations to accommodate his severe impairment limitations, consistent with the State findings below. Exhibit 11F/5.  Based on the record and the claimant's daily activities, the undersigned has also found the claimant capable sitting without restrictions.

AR 24-25.  Plaintiff argues the ALJ erred in finding him to be able to sit without restrictions, as

that finding clearly is inconsistent with Dr. Krueger's opinion that he "could be expected to sit

for at least 20-25 minutes interrupted, . . . and has a maximum sitting capacity of up to 6 hours."

AR 288.  The ALJ came to this conclusion based on the record and plaintiff's daily activities, but

she gives no indication as to what evidence in the record and which activities she relied on to so

find.[7]  Defendant points to evidence in the record of activities plaintiff has engaged in that she

---

[7] It is insufficient for an ALJ to reject the opinion of a medical source by merely stating without more, for example, that it is not supported by the record.  As the Ninth Circuit stated in See Embrey v. Bowen, 849 F.2d 418 (9th Cir. 1988):

To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

REPORT AND RECOMMENDATION - 12

argues supports the no sitting limitation the ALJ assessed.  But while as discussed further below some of those activities may indeed indicate an ability to function greater than that alleged by plaintiff, the actual evidence thereof in the record does not necessarily contradict the limitations on sitting found by Dr. Krueger. See ECF #15, p. 14 (citing AR 291, 362-64).  Accordingly, the undersigned finds the ALJ erred here.

The undersigned also agrees that the ALJ erred in failing to adopt, or explain why she did not adopt, the limitation to "10 – 15 minutes uninterrupted" of standing and walking assessed by Dr. Heilbrunn. AR 288.  Although defendant is correct that the ALJ's determination that plaintiff could "**stand and/or walk at least two hours out of an eight-hour workday**" is consistent with Dr. Heulbrunn's opinion to the extent that he opined plaintiff has "a maximum standing/walking capacity of up to 4 hours" (AR 21 (emphasis in original), 288), that says nothing about the ability to stand and walk for up to only 10 to 15 minutes uninterrupted Dr. Heilbrunn also found, which indicates the time restriction he felt plaintiff had in those activities *at any one time*.  Here too, the ALJ thus erred.  Nevertheless, for the reasons discussed below, the undersigned finds both errors are harmless and therefore do not form a proper basis for reversal and remand.[8]

E.   Dr. Robinson and Dr. Hoskins

Lastly in terms of the medical opinion evidence in the record, plaintiff argues the ALJ erred in giving "significant weight" (see AR 27), to the opinion s of non-examining consultative medical sources, John F. Robinson, Ph.D. (see AR 294-96, 298-310), and Robert Hoskins, M.D. (see AR 312-19), because Dr. Robinson did  not review or acknowledge all of the mental health evidence in the record, including the opinions of Dr. Wheeler and Dr. Krueger, and Dr. Hoskins

Id. at 421-22 (9th Cir. 1988) (internal footnote omitted).

[8] Also for the reasons discussed below, the undersigned finds no error in the ALJ's alleged failure to acknowledge plaintiff's condition worsened during the two years following Dr. Heilbrunn's evaluation of him, as the record fails to establish such worsening occurred.

REPORT AND RECOMMENDATION - 13

1   did not review any of the medical records beyond February 2009, and thus was unaware that

2   plaintiff needed to have both hips replaced just one month later.  But as discussed above, plaintiff

3   has failed to show the ALJ erred in his evaluation and analysis of the mental health evidence in

4   the record, including the opinions of Drs. Wheeler and Krueger.  Nor has plaintiff shown that the

5   medical evidence in the record concerning his physical impairments during the period after

6   February 2009, and that the ALJ was required to credit contradicts the opinion of Dr. Hoskins.

7   Indeed, as noted by the ALJ elsewhere in her decision and as discussed further below, the record

8   shows plaintiff improved overall subsequent to his bilateral hip replacement. See AR 22, 359,

9

10  362-67.  Thus, the ALJ committed no error here as well.

11  III.    The ALJ's Assessment of Plaintiff's Credibility

12          Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

13  642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

14  In addition, the Court may not reverse a credibility determination where that determination is

15  based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

16  discrediting a claimant's testimony should properly be discounted does not render the ALJ's

17  determination invalid, as long as that determination is supported by substantial evidence.

18  Tonapetyan , 242 F.3d at 1148.

19          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

20  reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

21  testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

22  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

23  claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

24  and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

25

26

REPORT AND RECOMMENDATION - 14

malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because his subjective complaints were "not reasonably consistent with the medical evidence" in the record. AR 22; see also AR 23.  A determination that a claimant's subjective complaints are inconsistent with objective medical evidence can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues this was improper in this case, because the ALJ did not properly evaluate the medical opinion evidence in the record.  But the only errors the ALJ made in regard to that evidence – and particularly in regard to the opinion evidence plaintiff argues supports his subjective complaints – was with respect to Dr. Heilbrunn's opinion, which as discussed further below are harmless.

The ALJ also discounted plaintiff's credibility due to the significant improvement he experienced following his bilateral hip surgery. See AR 22-23; see also AR 362-66.  For example, as noted by the ALJ, plaintiff reported being "very happy" with the outcome of that surgery. AR 22, 367; see also AR 365 ("He is extremely pleased with his pain relief.  He . . . states this is the first time he has been able to walk the mall without having pain in years and years.").  It is true that plaintiff did report having some continuing hip pain (see AR 359, 363, 378), but there is no further indication that the improvement in functioning he experienced – and,

REPORT AND RECOMMENDATION - 15

indeed, in the overall pain relief he reported feeling – significantly changed, even if he did still experience some pain.  As such, the ALJ did not err here.  See Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ further noted that plaintiff's alleged back pain "did not require surgery." AR 22. Plaintiff argues this is not a valid basis for discounting his credibility, but the use of conservative treatment only does constitute a clear and convincing reason for doing so. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation). Here too, therefore, the ALJ did not err.

The ALJ next found plaintiff to be not fully credible for the following reasons:

> The record further reveals that the claimant has worked with the allegedly disabling impairments.  According to the claimant, his commercial driver's license was revoked due to owing child support payments.  He reported that this was his only means of a sustainable income, as he had worked for more than three years as a delivery driver.  In fact, he was working up until his commercial license was revoked, according to the claimant.  The claimant additionally reported that he had worked several temporary positions and had been paid "under the table" at construction laborer jobs.  As of July 209, the claimant described doing "much better" to the point he was "back to work." The fact that the impairments did not prevent the claimant from working strongly suggests that they would not currently prevent work. . . .

AR 22. Plaintiff admits that his work activities "somewhat erode his credibility" in this case, but insists the fact thereof is not a convincing reason to completely reject all of his testimony about his current limitations. ECF #14, p. 12.  The record shows, however, that plaintiff engaged in work activities after his initial alleged onset date of disability.  See AR 290-91.  That is, plaintiff

REPORT AND RECOMMENDATION - 16

performed work activity at a time when he had claimed to be unable to do so at the time he filed

his application for disability benefits, which calls into question his overall credibility in this case.

As for his report in July 2009 that he was "doing 'much better' to the point he was 'back to

work'" (AR 22), plaintiff asserts the record does not clearly show what the work he returned to

was.  But the point is plaintiff himself admitted going back to work, which shows he was willing

and able to do so to at least some extent, again contrary to his claim of disability.

In addition, the ALJ found that the work plaintiff had performed "under the table" eroded

his credibility and that plaintiff's report regarding his "inability to pay fines associated with

owing child support, suggest[ed] the possibility of secondary gain issues." AR 22.  Plaintiff does

not specifically challenge these stated bases for discounting his credibility, and the undersigned

finds them to be proper.  Working under the table does involve a level of dishonesty, which once

more adversely impacts plaintiff's credibility overall. See Smolen, 80 F.3d at 1284 (ALJ may

consider ordinary techniques of credibility evaluation).  The ALJ also may consider the issue of

secondary gain in rejecting symptom testimony. See Tidwell, 161 F.3d at 602; Matney on Behalf

of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ discounted plaintiff's credibility for the following reasons as well:

> Some compliance issues further exist.  A treatment note states the claimant
> failed to have the requested tests performed and did not maintain contact with
> his health care provider. Exhibit 3F/5.  His treating orthopedist also mentioned
> concerns about compliance issues. Exhibit 15F/6.  The medical evidence does
> not support that his lack of compliance with treatment is the result of an
> impairment.  In fact, the claimant has significant functioning, as [discussed in
> regard to the medical opinion evidence in the record].  The claimant's lack of
> compliance indicates that he has contributed, at least in part, to his condition.
> Despite this noncompliance, the claimant reported improvement after his hip
> replacement, allowing him to walk three to four miles a day and walking the
> mall without pain.  He was able to decrease his pain medication
> "significantly."  He stated he had been "very active" at home. Exhibit 15F/2 -
> 3, 5, 8.

REPORT AND RECOMMENDATION - 17

AR 22-23.  Failure follow a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  So too, as discussed above, can evidence establishing medical improvement.  Plaintiff argues Dr. Wheeler's evaluation of him shows his lack of compliance is related to his depression.  See ECF #14, pp. 12-13 (citing AR 263).  But the mental status examination Dr. Wheeler performed shows plaintiff's insight into his mental health condition was within normal limits.  See AR 266.  As such, plaintiff fails to show his failure to comply with treatment was due to his mental health condition.[9]  See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness) (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions concerning depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation)).

The ALJ next found that:

> In addition, the claimant can perform a full range of daily activities, which is inconsistent with the nature and severity of the claimant's subjective complaints.  In 2009, the claimant reported resuming some of his normal activities, including playing six holes of golf and climbing following his bilateral hip replacement. Exhibits 15F/6 – 7, 16F/2.  In the claimant's adult function report, he described his daily activities as preparing simple meals, reading, laundry and shopping several times a week.  Personal care was "no problem." Exhibit 7E/1 – 7.  He likewise testified that he was walking daily, at least 100 yards and completing light housekeeping.  His mother no longer was able to drive and therefore, he took her to appointments.  These activities do not reflect the disabling limitations alleged by the claimant.

AR 23.  The Ninth Circuit has recognized "two grounds for using daily activities to form the

---

[9] The ALJ further noted that while plaintiff "reported he had not pursued mental health treatment," he had "medical coupons that would have covered this treatment, suggesting his symptoms may not be as significant as he allege[d]." AR 23.

REPORT AND RECOMMENDATION - 18

basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

First, such activities can "meet the threshold for transferable work skills." Id.  Thus, a claimant's

credibility may be discounted if he or she "is able to spend a substantial part of his or her day

performing household chores or other activities that are transferable to a work setting." Smolen,

80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability

benefits, and "many home activities may not be easily transferable to a work environment." Id.

In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized

for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or

her] other testimony." 495 F.3d at 639.

The undersigned agrees that not all of the activities listed above indicate the presence of

transferrable skills or that plaintiff is able to perform household chores for a substantial part of

the day.  It is also true that plaintiff reported in July 2009, experiencing "some post activity pain"

after engaging in his normal daily activities, including "some golf." AR 363.  But plaintiff did

not report that this prevented from performing or significantly impacted his ability to perform

those activities.  In addition, just one month prior thereto, plaintiff reported that "[a]s long as he

is staying active he notices minimal pain," and that he not only "has been able to golf six holes,"

but as noted by the ALJ "has been doing some climbing." AR 364.  This level of activity is not

consistent with plaintiff's testimony concerning his allegedly disabling physical impairments and

limitations.  The ALJ thus properly relied on that inconsistency.

Lastly, the ALJ pointed to the following other inconsistencies in plaintiff's testimony:

. . . [T]he claimant reported he needed a walker to ambulate but the evidence
does not show this was medically necessary and the claimant was able to walk

REPORT AND RECOMMENDATION - 19

> up to four miles a day.  His mother stated . . . that no assistive device was needed and the claimant confirmed this in his activities of daily living questionnaire.
>
> Dr. Heilbrunn's [sic] did not find any need for assistive device for standing or walking when he examined the claimant. Exhibits 5E/7, 7E/7, 7F/6.  The claimant's need for a walker is also not credible, as the claimant stated he was able to walk, shop and prepare simple meals unassisted.  His statement that he relied on his mother, who used a scooter, is not credible either given the claimant's relatively unlimited daily activities.  Additionally, although the claimant stated he did not prepare meals, this is due to lack of kitchen facilities, rather than a functional limitation. . . .

AR 23; see Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements).  Plaintiff argues these inconsistencies fail to take into account his worsening condition over time.  But as discussed above, the evidence in the record does not support that argument, but rather indicates overall improvement in plaintiff's condition as found by the ALJ.  Thus, while not every aspect of ALJ's credibility determination may have been free of error, this does not render the ALJ's overall credibility determination invalid, as it is supported by substantial evidence in the record for the reasons discussed above. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (although ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the Commissioner's sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he

REPORT AND RECOMMENDATION - 20

or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

> **. . . to perform less than the full range of light work . . . The claimant can occasionally lift and/or carry twenty pounds.  The claimant can frequently lift and/or carry ten pounds.  The claimant can stand and/or walk at least two hours out of an eight-hour workday.  The claimant can sit without restrictions.  All posturals are limited to occasional, except the claimant can never climb ladders, ropes or scaffolds.  The claimant must avoid concentrated exposure to extreme cold, vibrations and hazards.**
>
> **The claimant is limited to simple, one to three step tasks throughout the day and some complex work for 2/3 of the workday.  The claimant is limited to superficial and occasional contact with the general public.  This means the claimant cannot respond to demands/requests from the general public but can refer these demands/requests to other employees.  The claimant can work in the same room/vicinity as the general public but cannot work as a greeter.  The claimant can make simple work place decisions and work with few workplace changes.**

AR 21 (emphasis in original).  Plaintiff argues that because the ALJ failed to include all of the functional limitations established by the objective medical and other evidence in the record, this RFC assessment is not supported by substantial evidence.  The undersigned agrees that in light of the ALJ's failure to properly evaluate the sitting, standing and walking limitations Dr. Heilbrunn assessed discussed above, it cannot be said that the above RFC assessment is proper at this time.

REPORT AND RECOMMENDATION - 21

As discussed below, however, such errors in evaluating Dr. Heilbrunn's opinion and in assessing plaintiff's RFC are harmless in light of the vocational expert's testimony.

V.      The ALJ's Findings at Step Five

        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

        At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 67-68.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 67-70.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

significant numbers in the national economy. See AR 27-28.

Plaintiff argues that because the ALJ's RFC assessment did not include all of the functional limitations established by the objective medical and other evidence in the record, the hypothetical question the ALJ posed has no evidentiary value, and therefore the ALJ could not rely on the vocational expert's response thereto here.  Again, for the reasons discussed above, the undersigned agrees it cannot be said at this time that the RFC assessment, and therefore the hypothetical question, are completely accurate.  But because the vocational expert's testimony indicates that plaintiff would be able to perform the jobs identified *even if* the sitting, standing and walking limitations Dr. Heilbrunn assessed were adopted, the errors committed by the ALJ discussed herein are harmless.

As discussed above, Dr. Heibrunn found plaintiff "could be expected to sit for at least 20 – 25 minutes uninterrupted" with "a maximum sitting capacity of up to 6 hours," and could stand and walk for "10 – 15 minutes uninterrupted . . . with a maximum standing/walking capacity of up to 4 hours." AR 288.  In response to the hypothetical question the ALJ posed, the vocational testified that with respect to the jobs she identified the individual performing them "would be able to sit and stand at will or primarily be sitting." AR 69.  The vocational expert went on to testify that although the Dictionary of Occupational Titles ("DOT") defined those jobs as constituting light work, "approximately 50 percent of [them] can be performed primarily sitting or sitting and standing at will." AR 69-70.  This testimony is entirely consistent with the sitting, standing and walking limitations Dr. Heilbrunn assessed.

Plaintiff argues though that the ALJ erred in relying on that testimony because it deviated from the DOT's descriptions of the jobs the vocational expert identified.  The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains

REPORT AND RECOMMENDATION - 23

persuasive evidence to support the deviation."  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  In addition, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

Plaintiff asserts that "[a]lthough the vocational expert provided an explanation for her testimony, the explanation was not persuasive; she merely provided the unsupported statement that 'according to available labor market research, approximately 50 percent of all the jobs in this database can be performed primarily sitting or sitting and standing at will.'" ECF #14, p. 20 (quoting AR 69).  But plaintiff fails to state why he believes the vocational expert's explanation was unpersuasive.  As noted above, the ALJ is permitted to rely on vocational expert testimony in assessing a claimant's ability to perform other work.  The vocational expert expressly testified, furthermore, that she was relying on available market research.  Indeed, plaintiff does not explain or provide any evidence to show why that testimony is insufficient.  The undersigned, therefore, declines to find as such.

Plaintiff goes on to argue that "in her decision the ALJ did not even acknowledge that the vocational expert's testimony conflicted with the DOT." ECF #14, p. 20.  It is true that the ALJ stated that the vocational expert's testimony was consistent with the information contained in the DOT. See AR 28.  But again the undersigned finds such error to be harmless.  This is because immediately prior to that statement, the ALJ expressly noted "that the vocational expert testified

REPORT AND RECOMMENDATION - 24

that [the] jobs [the vocational expert identified] can be performed with sitting/standing at will."
Id. The ALJ thus not only was well aware of the testimony the vocational expert provided on this issue, but she specifically based her step five determination on that testimony. See id.  The undersigned further finds this constitutes an implied recognition – and also implied resolution – of the conflict that existed between that testimony and the DOT. See Magallanes, 881 F.2d at 755, (court may draw "specific and legitimate inferences from the ALJ's opinion").  Plaintiff's step five challenge therefore is rejected.

CONCLUSION

For all of the above reasons, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 6, 2013**, as noted in the caption.

DATED this 20th day of August, 2013.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25